IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| FARMLAND MUTUAL INSURANCE COMPANY and NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,<br><br>        Plaintiffs,<br><br>   v.<br><br>TRIANGLE OIL, INC.,<br><br>        Defendant. | Case No. 2:16-cv-01574-SU<br><br>**OPINION<br>AND ORDER** |

SULLIVAN, United States Magistrate Judge:

      Plaintiffs Farmland Mutual Insurance Co. and Nationwide Agribusiness Insurance Co. bring this declaratory judgment action seeking a determination of their duties to defend and indemnify defendant Triangle Oil, Inc., to whom plaintiffs issued various insurance policies. Defendant tendered the defense and claims for indemnification with regard to certain administrative actions concerning an alleged petroleum discharge at defendant's distribution

facility. Defendant has moved to abate or stay plaintiffs' cause of action for declaratory adjudication of their duty to indemnify defendant. (Docket No. 19). The Court heard oral argument on the Motion on May 17, 2017, and held a telephone conference on July 24, 2017, to discuss the status of the parties' pleadings, discovery and Motion to Abate. (Docket Nos. 36, 44). For the following reasons, the Court GRANTS defendant's Motion to Abate.[1]

## FACTUAL BACKGROUND

### I. The Parties

Plaintiffs are insurance companies. 2d Am. Compl. ¶¶ 2, 3 (Docket No. 41). Defendant is an oil and petroleum company with a "commercial and card-lock petroleum distribution facility" in John Day, Oregon. *Id.* ¶ 13. Defendant purchased general liability, automobile liability, first-party property liability, and umbrella liability coverage insurance from plaintiffs (the "Policies"). *Id.* ¶ 7. Sometime before May 2015, a release of oil or petroleum products allegedly occurred at the facility. *Id.* ¶¶ 10-26. Defendant contests the source and extent of the release as stated in the Underlying Claims. Answer to 2d Am. Compl. ¶ 19 (Docket No. 46).

### II. The Underlying Claims

#### A. The EPA Letter

On May 27, 2015, the U.S. Environmental Protection Agency ("EPA") sent defendant a "Notice of Federal Interest in an Oil Pollution Incident, Grant County, Oregon" (the "EPA Letter"), which alleged "a discharge or a substantial threat of a discharge of oil" at defendant's facility. 2d Am. Compl. ¶ 10. The EPA Letter stated that the "responsible party" (the owner or operator of the facility) was liable for clean-up costs and damages from the discharge. *Id.* Defendant allegedly "has not been required to incur any costs in responding to the EPA Letter."

---

[1] The parties refer to defendant's Motion alternately as a Motion for Stay and a Motion to Abate.

*Id.* ¶ 11. Defendant characterized the EPA Letter as a "claim" or "suit" and tendered it to plaintiffs for defense and indemnity under the Policies. *Id.* ¶ 12.

### B. The DEQ Orders

The next month, on June 3, 2015, the Oregon Department of Environmental Quality ("DEQ") sent defendant a proposed "Order on Consent" (the "Proposed Consent Order") with findings of fact that identified a release of petroleum products from defendant's facility into the soil and groundwater of other properties. *Id.* ¶ 13. The DEQ stated that it had communicated with Russ Young, the owner of the property containing the facility, "on the need to perform a remedial investigation and feasibility study." *Id.* The DEQ and defendant were unable to agree on the Proposed Consent Order. *Id.* ¶ 17.

Later that month, on June 18, 2015, the DEQ send defendant another letter, this one containing a Unilateral Order (the "Original Unilateral Order"), which largely repeated the earlier Proposed Consent Order's findings of fact. *Id.* ¶ 18. It also stated that the DEQ had implemented measures to abate petroleum vapors at off-site areas, and that defendant was liable for remedial action costs. *Id.* The Original Unilateral Order specified work defendant was to undertake, including "Interim Remedial Action Measures" and "Remedial Investigation and Feasibility Study." *Id.* ¶ 20. Defendant has complied with the Original Unilateral Order and incurred defense and indemnity costs. *Id.* ¶ 21.

The following year, on April 4, 2016, the DEQ sent defendant a "new Unilateral Order" (the "Amended Unilateral Order") that superseded the Original Unilateral Order. *Id.* ¶ 22. The Amended Unilateral Order largely repeated the prior Order's findings of fact, and reported, *inter alia*, on DEQ monitoring and clean-up work at the facility. *Id.* It also specified remedial work that defendant was to do. *Id.* ¶ 24. Defendant complied with the Amended Unilateral Order and

incurred defense and indemnity costs. *Id.* ¶ 25. Defendant characterized the Proposed Consent Order, Original Unilateral Order, and Amended Unilateral Order (collectively, the "DEQ Orders") each as a "claim" or "suit," and tendered them to plaintiffs for defense and indemnity under the Policies. *Id.* ¶ 26. Defendant contests the DEQ's allegations and claims of liability. Answer to 2d Am. Compl. ¶ 19.

### C. The DEQ Cost-Recovery Claim

Earlier, on July 27, 2015, the DEQ sent defendant a letter with a "Demand for Payment of Removal and Remedial Action Costs" (the "DEQ Cost-Recovery Claim"). 2d Am. Compl. ¶ 27. The letter referred to the Original Unilateral Order and stated there were documented releases of petroleum products from defendant's facility. *Id.* It enclosed invoices for oversight costs and removal action. *Id.* It "demanded" that defendant pay identified costs, and contained an "implicit threat of a future lawsuit." *Id.* Defendant paid oversight costs, but refused to pay removal costs. *Id.* ¶ 28. Defendant characterized DEQ Cost-Recovery Claim as a "claim" or "suit," and tendered it to plaintiffs for defense and indemnity under the Policies. *Id.* ¶ 29.

### D. The Private-Party Demand Letters

On February 24, 2016, counsel for purported landowners in the vicinity of defendant's facility sent defendant letters regarding the claimed "Invasion of Petroleum Fumes" into the their properties (the "Private-Party Demand Letters"), and demanded compensation. *Id.* ¶ 30. Defendant denied liability. *Id.* ¶ 31. Defendant characterized the Private-Party Demand Letters as a "claim" or "suit," and tendered them to plaintiffs for defense and indemnity. *Id.* ¶ 32.

### E. Plaintiffs' Response

The EPA Letter, DEQ Orders, DEQ Cost-Recovery Claim, and Private-Party Demand Letters are, collectively, the "Underlying Claims."

Plaintiffs acknowledged receipt of defendant's tender of the Underlying Claims and reserved their rights under the Policies. *Id.* ¶ 34. Subject to that reservation of rights, plaintiffs agreed to participate in defendant's defense of the Underlying Claims as if the Policies' automobile-liability provisions applied. *Id.*

## PROCEDURAL BACKGROUND

Plaintiffs filed their original Complaint on August 3, 2016. (Docket No. 1). Defendant moved to dismiss, to abate, or for a more definite statement as to, certain of plaintiffs' claims. (Docket No. 12). The parties stipulated that plaintiffs would file an amended complaint in response to defendant's Motion, mooting that Motion. (Docket No. 14).

Plaintiffs filed their First Amended Complaint on November 10, 2016. (Docket No. 15). Defendant again moved to dismiss for failure to state a claim, for a more definite statement, and to abate Count Five of the First Amended Complaint. (Docket No. 16). Defendant also filed the instant "Motion to Abate Count 5 of Plaintiff's First Amended Complaint," which, in part, repeated arguments from the then-pending Motion to Dismiss. (Docket No. 19). The Court heard oral argument on both Motions on May 17, 2017. At the hearing, the Court granted defendant's Motion for a More Definite Statement, denied without prejudice its Motion to Dismiss for Failure to State a Claim, and took under advisement its Motion to Abate. (Docket No. 36).

Plaintiffs filed a Second Amended Complaint, which defendant answered. (Docket Nos. 41, 42). The Second Amended Complaint has six causes of action for declaratory relief, including Count Six, "No Duty to Indemnify as to the Underlying Claims." 2d Am. Compl. ¶¶ 63-84. The First Amended Complaint had an analogous claim at Count Five. 1st Am. Compl. ¶¶ 50-61. The Court held a telephone conference on July 24, 2017, in part to discuss the status

of the Motion to Abate. (Docket No. 44). On August 10, 2017, pursuant to the parties' Joint Stipulation of August 4, 2017, the Court ordered that "Defendant's Motion to Abate Count 5 of Plaintiffs' First Amended Complaint [Docket No.] 19 is deemed directed at and applied to Count 6 of plaintiffs' Second Amended Complaint [Docket No.] 41." (Docket Nos. 45, 47). The Court took defendant's Motion to Abate under advisement as of the date of the Joint Stipulation.[2]

## LEGAL STANDARD

Under Oregon insurance law, the duty to defend is independent of the duty to indemnify. *Ledford v. Gutoski*, 319 Or. 397, 403 (1994); *see also Am. States Ins. Co. v. Dastar Corp.*, 318 F.3d 881, 890 (9th Cir. 2003).

> Whether an insurer has a duty to defend an action against its insured depends on two documents: the complaint and the insurance policy. An insurer has a duty to defend an action against its insured if the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy. In evaluating whether an insurer has a duty to defend, the court looks only at the facts alleged in the complaint to determine whether they provide a basis for recovery that could be covered by the policy.

*Ledford*, 319 Or. at 399-400 (citations omitted). The duty to indemnify, by contrast, depends on "the facts proved at trial on which liability is established" which "may give rise to a duty to indemnify if the insured's conduct is covered," even if the complaint does not give rise to the insurer's duty to defend. *Id.* at 403.

Oregon courts, when considering an insurer's action for declaratory judgment to determine the scope of its duties to defend or indemnify, will often dismiss or stay consideration of a claim concerning duty to indemnify where that duty purportedly arises from an ongoing independent proceeding by a third party against the insured, which proceeding would determine the insured's liability. *N. Pac. Ins. Co. v. Wilson's Distrib. Serv., Inc.*, 138 Or. App. 166, 175

---

[2] The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636. (Docket No. 35).

(holding that the trial court erred in denying the insured's motion to stay the insurer's declaratory judgment action as to the duty to indemnify, pending outcome of the underlying tort action against the insured). Federal courts, applying Oregon law, have followed this procedure in staying declaratory judgment claims to determine an insurer's duty to indemnify, pending independent resolution of the underlying claims. *See, e.g.*, *Scottsdale Ins. CO. v. Ortiz & Assocs.*, No. 3:13-cv-01791-AA, 2014 WL 1883653, at *3-4 (D. Or. May 9, 2014) (staying duty to defend declaratory judgment action pending resolution of liability in underlying tort suit); *Charter Oak Fire Ins. Co. v. Interstate Mech., Inc.*, 958 F. Supp. 2d 1188, 1218 (D. Or. 2013), *voluntarily vacated pursuant to settlement*, No. 3:10-cv-01505-PK, 2014 WL 9849553 (D. Or. Jan. 6, 2014) (staying declaratory judgment action as to duty to indemnify); *Bituminous Cas. Corp. v. Kerr Contractors, Inc.*, No. CV 10-78-MO, 2010 WL 2572772, at *7 (D. Or. June 22, 2010) (dismissing declaratory judgment action concerning both duties to defend and indemnify, in favor of resolution in pending state court proceeding); *Allstate Ins Co. v. Staten*, Civ. No. 07-125-CL, 2007 WL 3047219, at *2 (D. Or. Oct. 17, 2007) (stating that the court "would refrain from determining the indemnity issue until the [underlying] state court action is completed"); *Travelers Prop. Cas. Co. of Am. v. Martella*, No. CV-04-176-ST, 2004 WL 1375283, at *6 (D. Or. June 18, 2004) (staying declaratory judgment action, because "[t]he indemnity issue must await resolution of the liability issue" in the underlying state court litigation).

> The reasoning for abating a duty to indemnify declaratory judgment claim is:
>
> [W]hen the underlying tort action is still underway, it is appropriate to stay a simultaneous coverage action determining the duty to indemnify if the coverage action places the insured in "the conflictive position" of being required to abandon its denial of liability in the underlying liability case in order to demonstrate coverage. . . . Further, to determine [the] duty to indemnify, th[e] Court would have to review the facts in the underlying lawsuit, which essentially creates duplicative litigation and likely would cause th[e] Court to engage in needless determination of state law issues.

*Scottsdale Ins. Co.*, 2014 WL 1883653, at *3-4 (quotations and citations omitted). For instance, a "conflictive position" arises if the insured *denies* liability in the underlying tort lawsuit, while seeking to *show* in the declaratory judgment action that it was liable due to negligence, in order to fall within a policy's provisions (or outside its exclusions). *Id.* at *3.

## ANALYSIS

Plaintiff's sixth cause of action, "No Duty to Indemnify as to the Underlying Claims," asks the Court to "determine and declare [plaintiffs'] indemnify obligations in connection with the Underlying Claims, if any, in light of" the pollution exclusions and the stated scope of the Policies' provisions. 2d Am. Compl. ¶¶ 63-84.

The Underlying Claims allege that defendant is liable for the alleged petroleum release, including the cost of removal or remedial actions; is required to investigate the petroleum release and remediate; and is responsible for soil and groundwater contamination. *Id.* ¶¶ 18-20, 22-24. Defendant contests liability. *Id.* ¶¶ 28, 31; Foster Decl. Dec. 14, 2016 ¶ 12 (Docket No. 20). These administrative proceedings in the Underlying Claims are ongoing, and whether and to what extent defendant may be liable for the alleged discharge has yet to be decided. *Id.* ¶¶ 18, 20, 22 (Docket No. 20); Foster Decl. Jan. 27, 2017 ¶¶ 5-7, 10, 29 (Docket No. 29). Contrary to plaintiffs' argument, defendant's liability in the Underlying Claims has not been finally resolved, and fact-finding has not been completed. *Id.* Those Underlying Claims could also result in litigation, which could entail further determinations of liability or fact-finding. *Id.*

Determining whether plaintiffs owe defendant any indemnity obligation could put defendant in the conflictive position of showing, in this action, that it is liable for the discharge in the Underlying Claims in order to obtain indemnity coverage from plaintiffs, while defending itself and denying liability for the discharge in those claims themselves. Foster Decl. Dec. 14,

2016 ¶¶ 19, 21 (Docket No. 20); Foster Decl. Jan. 27, 2017 ¶¶ 16, 22, 32 (Docket No. 29). For instance, plaintiffs assert that there is no coverage under the Policies because the discharge did not coming from tanker trucks but from failed tanks and piping, and that the Policies do not cover discharge from failed tanks or piping. Foster Decl. Dec. 14, 2016 ¶ 19, 21 (Docket No. 20); *see also* 2d Am. Compl. ¶ 72. However, the DEQ Orders directly put at issue whether defendant is responsible for a discharge from tanker trucks, or from tanks and piping. *See* Foster Decl. Dec. 14, 2016 ¶ 10, Ex. E (Docket No. 20-5) (July 28, 2015 DEQ demand letter) ("Releases at the facility originated from Triangle Oil Inc. operations on its property likely from leaking storage tanks and underground transfer piping, and/or spills during petroleum transfers from tanker trucks, and/or leaks from tanker trucks stored on the property."). For defendant to establish coverage in this action could require it to prove that the petroleum release *did* come from its tanker trucks, while *denying* that it came from those trucks in the Underlying Claims. Foster Decl. Dec. 14, 2016 ¶ 19 (Docket No. 20). The DEQ proceedings have not resolved the fact questions regarding the source of the petroleum release, and defendant continues to defend itself there. *Id.* ¶ 20. This presents a conflictive position supporting a stay.

In *Evraz Oregon Steel Mills, Inc. v. Continental Insurance Co.*, plaintiff insured brought an action to "enforce its alleged right to defense for environmental claims under policies" defendant had issued. Defendant counterclaimed for declaration that it had no indemnify obligations. No. CV 08-447-JE, 2009 WL 789658, at *1, 4 (D. Or. Mar. 20, 2009). The "environmental claims" were allegations by the EPA, DEQ, and the Trustees for National Resource Damages that plaintiff was a "potentially responsible party" for Superfund site contamination. *Id.* at *2. Plaintiff moved to stay the counterclaims that sought to adjudicate defendant's indemnity obligations. In deciding whether to stay, the court looked to the definition

of "lawsuit" under Oregon law, Or. Rev. Stat. §§ 465.480(1)(a) & (2)(b), to include "actions taken under administrative oversight of the" EPA and DEQ "pursuant to written voluntary agreements, consent degrees and consent orders," and include DEQ written actions that direct or request "that an insured take action with respect to contamination," and which makes such administrative actions equivalent to a "suit" or "lawsuit" as those terms are used in an insurance policy. *Id.* at *6. The court held that determining defendant insurer's obligations to indemnify plaintiff could place plaintiff in a conflictive position as to the underlying claims regarding whether it was liable for the alleged contamination. *Id.* at *9. The court thus stayed resolution of the indemnity issues. *Id.* at *12.

Like *Evraz*, this action concerns DEQ and EPA actions that assert responsibility for environmental contamination. 2009 WL 789658, at *2-4. Also like *Evraz*, determining plaintiffs' indemnity obligations could put defendant in the conflictive position of disputing liability in the Underlying Claims while admitting liability here to obtain indemnity coverage. *Id.* at *8-9. *Evraz* thus supports staying plaintiffs' claim for declaratory judgment concerning their indemnity obligations. *See also Country Mut. Ins. Co. v. Lund*, No. 03:14-cv-00594, 2014 WL 3530189, at *4 (D. Or. July 14, 2014) (staying duty to indemnify declaratory judgment claim, due to risk of conflictive position and duplicative litigation: "to defend himself in this action and establish that [plaintiff insurer] does have a duty to indemnify, [defendant insured] may have to concede facts demonstrating his negligence," and "to determine Plaintiff's duty to indemnify, I would have to review the facts in the Underlying Action, which essentially creates

duplicative litigation").[3] The weight of authority in Oregon state courts and Ninth Circuit district courts supports a stay of Count Six of plaintiffs' Second Amended Complaint.

## CONCLUSION

For these reasons, the Court GRANTS defendant's Motion to Abate. (Docket No. 19). Count Six of the Second Amended Complaint, and any determination of plaintiffs' duty to indemnify defendant as to the Underlying Claims, is stayed pending resolution of those Claims. Upon resolution of those Claims, the parties shall notify the Court and, within 21 days of that notice, file supplemental briefing regarding the impact of such resolution on this matter.

IT IS SO ORDERED.

DATED this 17th day of August, 2017.

/s/ Patricia Sullivan
PATRICIA SULLIVAN
United States Magistrate Judge

---

[3] Plaintiffs contend that the Court should follow *Home Indemnity Co. v. Stimson Lumber Co.*, 229 F. Supp. 2d 1075, 1092 (D. Or. 2001) (adopting Findings and Recommendation), where, to address the problems presented by proceeding with a declaratory judgment action regarding the duty to indemnify with an underlying action underway, the court held that "the motion for stay should be denied with the understanding that, while there are some factual issues to be determined in the coverage case which overlap with issues present in the siding claims, no estoppel effect will be accorded to those determinations." As explained at the July 24, 2017 conference, the Court declines to adopt *Stimson*'s approach, which is limited to its unique facts—eighteen underlying actions, in different states, including a class action—absent here. *Id.* at 1077. The *Stimson* court itself stated that its approach had limited application to other cases:
> Because of the need in certain cases, such as here where there are multiple third-party cases and large sums of money involved, to resolve coverage issues expediently, a stay of the coverage case is not an efficient or practical method of protecting the insured or the insurer from the problems inherent in the conflict. One case or the other must necessarily be decided first, and having some additional information about the parties' rights and obligations under the insurance contracts during the resolution of the third-party claims should result in more equitable resolution of those claims.

*Id.* at 1092.